COOPER v SHERMAN

1. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—FINDINGS
   OF FACT—STATUTES.

   Findings of the Employment Relations Commission with respect
   to questions of fact are conclusive if supported by competent,
   material and substantial evidence on the record considered as a
   whole (MCLA 423.23[e]).

2. ADMINISTRATIVE LAW—AGENCY FINDINGS—APPELLATE REVIEW—
   APPEAL AND ERROR.

   Appellate review of an administrative agency's findings is prop-
   erly limited; it necessarily entails a degree of qualitative and
   quantitative evaluation of evidence considered by the agency,
   yet it must be undertaken with considerable sensitivity in
   order that the courts accord due deference to administrative
   expertise and not invade the province of exclusive administra-
   tive factfinding by displacing an agency's choice between two
   reasonably differing views.

3. LABOR RELATIONS—EMPLOYMENT RELATIONS COMMISSION—FINDINGS
   —UNFAIR LABOR PRACTICE—CONCERTED PROTECTED ACTIVITIES
   —CONCLUSIVENESS—EVIDENCE—STATUTES.

   An Employment Relations Commission finding that an employer
   had engaged in an unfair labor practice by interfering with the
   statutory right of employees to engage in concerted protected
   activities was supported by competent, material and substantial
   evidence where the employer discharged employees for failing
   to attend, on the employees' days off, employer-employee meet-
   ings to discuss the labor grievances of both parties. (MCLA
   423.8, 423.16, 423.23[e], 423.23[f]).

Appeal from the Employment Relations Com-
mission. Submitted June 18, 1975, at Detroit.
(Docket No. 20557.) Decided August 12, 1975.

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur 2d, Labor § 1155 *et seq.*
[2] 2 Am Jur 2d, Administrative Law §§ 553–555.
[3] 48 Am Jur 2d, Labor § 1178 *et seq.*

Alice Cooper, Alice Bradley, and Claudia Daniels charged Nimrod M. Sherman, M.D., P. C., doing business as McDougall Medical Center, with engaging in unfair labor practices. Decision and order by the Employment Relations Commission in favor of plaintiffs. Defendant appeals. The Commission cross-appeals. Decision affirmed and order of enforcement granted.

*Jobes & LeBost, P. C.,* for plaintiffs.

*Andrew W. Foster, Jr.,* for defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for the Employment Relations Commission.

Before: T. M. BURNS, P. J., and QUINN and M. J. KELLY, JJ.

T. M. BURNS, P. J. During the period in controversy in this case, defendant Dr. Nimrod M. Sherman was doing business as a professional corporation and was engaged in the practice of psychiatry at the clinic and operated by him in the City of Detroit known as the McDougall Medical Center (hereinafter referred to as the Center). Three other full-time doctors also maintained separate practices at the Center, each doctor employing his own staff.

Dr. Sherman employed Alice Cooper, a laboratory technician and receptionist, Claudia Daniels, a medical receptionist, and Alice Bradley, an X-ray technician. He also employed a part-time secretary, a manager, a part-time physician and occasionally a security guard. The other three full-time doctors employed approximately eight employees.

Some time prior to March 1, 1973, the doctors were planning to establish a group practice as a professional corporation. These plans were only in the formative stage at the time the events involved in this case took place.

Everyone at the clinic worked a five-day week, with Wednesday and Sunday as their days off. On Wednesday, March 7, 1973, Dr. Sherman held a meeting at the Center to discuss the changes in practice and procedure that would occur when the group practice was organized and began to function. The record reveals that some time after this meeting, the employees informed the doctors that they did not wish to attend meetings at the Center on their day off.

On May 16, 1973, the doctors' employees, including plaintiffs herein, met at Mrs. Cooper's home to discuss various working conditions and the possibility of forming a union. The doctors were told about the meeting on May 15, 1973, and were also informed about some of the employee grievances that were to be discussed. It was apparently agreed between the doctors and the employees that upon conclusion of the May 16 meeting, a joint meeting between the doctors and the employees would be held to try to resolve the grievances of both the doctors and the employees.

As a result of the May 16 meeting, a list of 17 grievances was prepared. On May 17, 1973, plaintiff Cooper unsuccessfully attempted to arrange a meeting between the doctors and the employees. Dr. Sherman then suggested that a meeting could be arranged for May 18, 1973, at 11 a.m. The meeting never developed, apparently due to the busy schedule of the doctors. A tentative meeting for Sunday, May 20th was discussed, but it also did not take place.

On the afternoon of Tuesday, May 22, 1973, the employees received written notice of a meeting scheduled for the next day, Wednesday, May 23, 1973. Mrs. Cooper testified that due to the lateness of the notice, at least five employees had already left and that those who were present signed the notice expressing their inability to attend the meeting. Although the doctors appeared for the meeting, none of the employees attended. The employees testified that they were disgusted over the doctors' failure to meet with them previously and had resolved as a group not to meet with the doctors on their day off.

On June 1, 1973, the employees were again notified of a meeting to be held on Wednesday, June 6, 1973, but none of the employees of the various doctors attended. Mrs. Cooper testified that she did not attend because she was suffering from the after-effects of having a tooth extracted the day before. Other testimony established as mentioned above, that the employees had agreed to act in concert in regard to not attending meetings on their day off.

After it became apparent that none of the employees were going to attend the June 6th meeting, Dr. Sherman decided to discharge his three employees, plaintiffs herein, on the ground that their refusal to attend the meeting constituted insubordination. He then called each of the plaintiffs and notified them or their families that they were discharged. The other three doctors took no action against their employees for refusal to attend the meeting.

On Friday, June 8, 1973, three of the doctors met with the employees of the Center and at that time Dr. Sherman inquired whether the employees knew what had happened to the girls who were

fired on Wednesday. He further stated that he had heard from a reliable source that plaintiff Daniels was planning a walkout and that things were going to change and be different around the Center in the future.

On September 6, 1973, plaintiffs filed unfair labor practice charges against their employer, Dr. Sherman. Following an October 3, 1973, hearing on the charges, the administrative law judge found that the employer had engaged in unfair labor practices within the meaning of § 16(1) of the labor relations and mediation act (LMA), MCLA 423.16; MSA 17.454(17), by interfering with the statutory right of employees to engage in concerted protected activities under § 8 of the act. Based on his findings, the administrative law judge recommended that the Michigan Employment Relations Commission (hereinafter MERC) issue an order requiring defendant-employer to (1) cease and desist from terminating or threatening to terminate employees engaged in protected, concerted activities under the LMA; (2) reinstate the plaintiffs with back pay; (3) take certain affirmative action and cease and desist from engaging in other illegal activity. The recommended order was issued on March 20, 1974, and after exceptions were taken by defendant, MERC entered a supplemental decision and order on May 17, 1974, affirming the recommended order of the administrative law judge. Defendant now appeals, MERC having filed a cross-appeal requesting enforcement of its supplemental decision and order.

The question we must consider is whether there was sufficient evidence presented to support the finding that the employees' refusal to attend meetings on their day off constituted concerted activity within the meaning of § 8 of the labor mediation act.

The standard of appellate review of MERC Board findings is set forth in MCLA 423.23(e); MSA 17.454(25)(e):

"The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive."

In the recent case of *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974), our Supreme Court pointed out that our review of an administrative agency's findings should be limited:

"Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review."

See also *Michigan Employment Relations Commission v Kleen-O-Rama,* 60 Mich App 61; 230 NW2d 308 (1975).

Applying these principles to the case before us, our review of the record discloses competent, material and substantial evidence that supports the findings by MERC that defendant violated § 16(1) of the LMA. Contrary to defendant's claim, the plaintiffs' decision to present grievances to their employer and their decision to refuse to attend any Wednesday meetings because it was their day

off did not amount to insubordination, but rather constituted "concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection" and as such was protected by §§ 8 and 16(1) of the LMA. While an employer may discharge employees for cause separate and apart from any concerted activities, the record in the case at bar does not support defendant's claim that plaintiffs engaged in activities which were unlawful. The concerted activities engaged in by the plaintiffs for the purpose of alleviating a condition of employment which was uncomfortable fell within the protection of § 8 of the LMA.

We affirm the findings of the MERC and grant its request for an order of enforcement. No costs, a public question being involved.